UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| EPC HEALTHCARE, LLC<br><br>                   *Plaintiff*,<br><br>    v.<br><br>CIRCLELINK HEALTH LLC, RAPHAEL ANSTEY, JOSEPH ANTSEY, RONY SCHLAPFER, SENTINEL INS. CO. LTD, GEMINI INSURANCE COMPANY and CIRCLELINK HEALTH, INC.,<br><br>                  *Defendants.* | Civil No. 3:20cv274 (JBA)<br><br>August 5, 2021 |

**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTIONS TO DISMISS AND DENYING DEFENDANTS' MOTION TO STRIKE**

Defendants Raphael Anstey, Joseph Anstey, Rony Schlapfer and CircleLink Health LLC (together CircleLink) move to dismiss all counts against them for failing to state a claim upon which relief can be granted [Doc. # 97]. Defendants Sentinel Insurance Company (Sentinel) and Gemini Insurance Company (Gemini) move to dismiss because Connecticut law does not permit suit against insurance companies to proceed until thirty days after judgment had been entered against the insured [Docs. # 95, 96]. Plaintiff EPC Healthcare LLC (EPC) opposes all three motions [Docs. # 98, 99, 100].

**I.    Background**

CircleLink is a remote medical services provider based in Connecticut that supports individuals' management of chronic conditions through their software. EPC is a Louisiana-based marketing and distribution company that contracted with CircleLink to promote its product. Defendants Raphael and Joseph Anstey and Rony Schlapfer were all officers or directors of CircleLink during the time relevant to this action. Sentinel and Gemini insure CircleLink.

In 2016, CircleLink and EPC entered into a contract (Contract One) in which EPC agreed to promote CircleLink to medical providers in exchange for a portion of the per-patient proceeds paid to CircleLink from insurance. Specifically, CircleLink promised to pay EPC between $2.50 and $7 for each individual who connected to its remote services through the work of EPC. (Services Fee, Ex. B to Contract One [Doc. # 97-2] at 11-12.) Plaintiff alleges that CircleLink assured Plaintiff of its "ability to fulfill any contract Plaintiff coordinated with healthcare entities anywhere in the country." (Am. Compl. [Doc. # 93] ¶ 2.) Contract One contained a forum selection clause requiring that the contract "be construed and enforced in accordance with the laws of the State of Connecticut," and the parties agreed that "[e]xclusive venue and jurisdiction with respect to any dispute, controversy, or claim arising under or related to this Agreement, whether directly or indirectly, shall be in those state and federal courts located in Fairfield County, Connecticut." (Contract One [Doc. # 97-2] ¶ 18.)

In accordance with the contract, EPC facilitated an agreement with the Louisiana Hospital Association/ShareCor (LHA) to make CircleLink a preferred provider, and the three entities entered into a contract in January 2017 (Contract Two), with EPC acting as CircleLink's agent. (Contract Two [Doc. # 97-3] at 1.) Under Contract Two, LHA granted CircleLink and EPC, as its agent, preferred provider status, which allowed EPC to more easily promote CircleLink to its member hospitals. (*Id.*) In exchange, EPC agreed to pay LHA $1 of the $7 it received from CircleLink for each new patient who joined CircleLink as a result of the agreement. (*Id.* ¶ 7.1.) The parties to Contract Two agreed to honor the agreement under Louisiana law. (*Id.* ¶10.1.)

Thereafter, in February 2017, EPC facilitated an agreement (Contract Three) between Lafayette General Health (LGH), an LHA member, and CircleLink, in which LGH purchased CircleLink's software and support services. (Contract Three [Doc. # 73-4].) Contract Three is also governed by Louisiana state law and terminable without cause. (*Id.* ¶¶ 22, 4.2.) EPC was not a party to Contract Three.

2

In September 2017, LGH terminated Contract Three. EPC alleges the contract was terminated because CircleLink did not have enough capacity to fulfill the terms of the contract, (Am. Compl. ¶¶ 29 – 31), while CircleLink contends that the contract was terminated because LGH switched its Medicare reimbursement procedure and thus could no longer recommend CircleLink to its patients, (CircleLink Defs.' Mem. in Supp. of Mot. to Dismiss [Doc. # 97-1] at 5.).

EPC initially brought suit against CircleLink, Sentinel, and Gemini in Louisiana state court, alleging breach of fiduciary duty and unjust enrichment under Louisiana law. (Pet. for Damages [Doc. # 1-1] at 3-6.) CircleLink removed the matter to the U.S. District Court for the Western District of Louisiana, (Civil Cover Sheet [Doc. # 1-4] at 1-2), and then successfully transferred the case to the District of Connecticut on the basis of the forum selection clause of Contract One.[1] (*See* J. Adopting Report and Recommendation [Doc. # 41] Granting Mot. to Transfer Case [Doc. # 51] at 1.)

After the case was transferred, EPC amended its complaint to add a count of tortious interference with contract against Defendant Raphael Anstey.[2] (Am. Compl. ¶¶ 34-35.) Thereafter, Defendants moved to dismiss all claims. (Def. Sentinel Insurance Co., LTD.'s Mot. to Dismiss [Doc. # 95]; Def. Gemini Insurance Co.'s Mot. to Dismiss [Doc. # 96]; Defs.' CircleLink, Anstey, Anstey, and Schlapfer Mot. to Dismiss [Doc # 97].) Oral argument was held on July 16, 2021.

---

[1] EPC further moved to remand the matter to state court, which the Court denied on October 20, 2020 [Doc. # 92].

[2] EPC also included counts entitled "respondeat superior as to Defendant CircleLink," "damages formula regarding tortious interference and breach of fiduciary duty," and "equitable estoppel – against Circle Link (sic) Defendants," (*id.* ¶¶ 36, 50, 57), in its Amended Complaint, but at Oral Argument conceded that those "claims" were intended to supplement the viable claims of tortious interference, breach of fiduciary duty, and unjust enrichment.

**II.     Legal Standard**

To survive a motion to dismiss under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). To determine whether an allegation is plausible, a court must accept all the factual allegations as true, while disregarding any conclusory allegations or mere recitals of legal elements. *Id.* at 663. Then the court must read all the well-pleaded allegations and conclude whether there are sufficient facts to "nudge[] their claims across the line from conceivable to plausible." *Twombly*, 550 U.S. at 570.

**III.    Discussion**

   *a.   Choice of Law*

EPC argues that Contract Two modified the forum selection clause of Contract One and that the proper venue is therefore the Western District of Louisiana. (Pl.'s Mem. in Opp. to CircleLink Defs.' Mot. [Doc. # 98] at 14-16.) However, the Western District of Louisiana has already ruled on this issue, and this Court sees no basis for disagreeing with its conclusion. (*See* Report and Recommendation Granting Mot. to Transfer Case (Recommendation) [Doc. # 41].)

In her Recommendation, Magistrate Judge Carol B. Whitehurst observed that the only contract in dispute is Contract One, which gave rise to the alleged fiduciary relationship between EPC and CircleLink and from which EPC alleges it was harmed.[3] (*Id.*

---

[3] EPC's claim of tortious interference with contract also directly arises from Contract One. In its claim of tortious interference, EPC argues that Raphael Antsey, in his position as CEO of CircleLink, tortiously interfered with Contract Three, between his company and LGH, by misrepresenting CircleLink's capacity to fulfill the contract, using Contract Three to boost investment and then misappropriating those funds, and by treating the LGH decisionmakers rudely. (Am.. Compl. ¶¶ 28 – 31.) However,

at 8.) Where a contract includes a mandatory forum selection clause, that clause must be enforced unless "exceptional circumstances" warrant a departure. (*Id.* at 11.) *See also Atl. Marine Const. Co. v. U.S. Dist. Ct. for W. Dist. of Texas,* 571 U.S. 49, 63 (2013) ("[A] valid forum-selection clause should be given controlling weight in all but the most exceptional cases."). As no exceptional circumstances exist here, *see Atl. Marine*, 571 U.S. at 64 ("[A] district court may consider arguments about public-interest factors only," which "will rarely defeat a transfer motion."), the mandatory forum selection clause controls the relationship at issue, and the proper venue is the District of Connecticut.

This Court agrees that the contract at issue is Contract One and that its forum selection clause therefore controls. Contract Two involves a third entity not party to Contract One and does not explicitly incorporate the terms of any other contract. Moreover, Plaintiff has not alleged that the parties intended Contract Two to modify or replace Contract One. (*See* Am. Compl. ¶ 41 (stating that Contract One "*anticipated* and *impliedly involves*" Contract Three but not claiming that one modified the other) (emphasis added).) *See also Vasily v. MONY Life Ins. Co. of Am.*, 104 F. Supp. 3d 207, 214 (D. Conn. 2015) ("[C]ontract modification requires mutual assent to the meaning and conditions of the modification and the parties must assent to the same thing in the same sense.") (internal quotations omitted). Thus, Contract Two did not replace or modify Contract One, and the forum selection clause of Contract One controls. As no exceptional circumstances warrant a departure from the forum selection clause, this Court concludes that the proper venue is Connecticut and will apply Connecticut law.

---

the only way in which EPC could claim harm from interference with Contract Three, to which it is not a party, is through the profits it stood to gain as a result of Contract One. Absent a contractual relationship between EPC and CircleLink, EPC could not have been harmed by the interference of a contract to which it was not a party.

5

b. *Insurers' Motions to Dismiss*

Under Connecticut law, a prevailing party may only bring suit against the insurer of the non-prevailing party thirty days after the judgment is entered and remains unsatisfied. Conn. Gen. Stat. § 38a-321. Plaintiff concedes that Sentinel's and Gemini's motions should be granted if Connecticut law applies, which the Court has now determined it does. Thus, the Defendant insurers' motions to dismiss [Docs. # 95, 96] are granted.

c. *CircleLink's Motion to Dismiss*

EPC brings three claims against CircleLink: Count One alleges tortious interference with contract (Contract Three) by CircleLink's CEO Raphael Antsey; Count Two alleges breach of fiduciary duty by CircleLink generally; and Count Three alleges unjust enrichment.

    i.    *Tortious Interference with Contract*

Tortious interference with contract requires the plaintiff to establish 1) the existence of a contractual relationship; 2) defendant's knowledge of the relationship; 3) defendant's intent to interfere with that relationship; 4) that defendant interfered tortiously with that relationship; and 5) that defendant suffered a loss from that interference. *Rioux v. Barry*, 283 Conn. 338, 351 (2007). However, a claim of tortious interference may only be brought against a third party not subject to the contract because the defending party could otherwise be liable in contract and in tort. *Metcoff v. Lebovics*, 123 Conn. App. 512, 520 (2010). "The general rule is that the agent may not be charged with having interfered with a contract of the agent's principal." *Id.*

6

Here, Plaintiff alleges that Mr. Anstey was "acting in the course and scope of [his] employment with Defendant, CircleLink, which Defendant is vicariously liable under the doctrine of *respondeat superior.*" (Am. Compl. ¶ 36.) Plaintiff alleges that Mr. Anstey interfered with Contract Three, to which his principal CircleLink was party. (*Id.* ¶ 34.) As Connecticut law does not permit an action for tortious interference against an agent of a company (here, CircleLink) that was party to the contract because a party cannot tortiously interfere with its own contract, Plaintiff's claim against Mr. Antsy for tortious interference with his company's contract necessarily fails. Defendants' motion to dismiss is granted as to Count One.

### ii. Breach of Fiduciary Duty

Plaintiff alleges that CircleLink breached its fiduciary duty when it took advantage of its superior knowledge and skills in the remote nursing sector to Plaintiff's detriment. (Am. Compl. ¶¶ 37-49.) CircleLink argues that no plausible fiduciary relationship is alleged. (Mem. in Opp. at 11-13.)

A fiduciary relationship is "characterized by a unique degree of trust and confidence between the parties, one of whom has superior knowledge, skill or expertise *and is under a duty* to represent the interests of the other." *Biller Assocs. v. Peterken*, 268 Conn. 716, 723 (2004) (emphasis in original). However, "not all business relationships implicate the duty of a fiduciary," as "any time one party hires another to perform a service on their behalf, trust and confidence are placed in the latter party" to perform its duties diligently. *Essex Ins. Co. v. William Kramer & Assocs. LLC*, 331 Conn. 493, 512, 509 (2019). What distinguishes the fiduciary relationship is the relative naivete of one party and its vulnerability in the face of the other's clear

7

expertise, often made more acute by the superior party's "access to, or influence regarding, another party's moneys, property, or other valuable resources." *Id.* at 512; *see id.* at 509 ("The unique element that inheres a fiduciary duty to one party is an elevated risk that the other party could be taken advantage of—and usually unilaterally.") While Plaintiff is correct that Connecticut "has chosen to maintain an imprecise definition of what constitutes a fiduciary relationship in order to ensure that the concept remains adaptable to new situations," *Ahern v. Kappalumakkel*, 97 Conn. App. 189, 194 (2006), a contractual relationship between two sophisticated commercial parties does not typically give rise to a fiduciary relationship. *See Biller*, 269 Conn. at 724 (finding no fiduciary duty even where one party was a law firm because "it is clear that [both parties] were sophisticated parties engaged in arm's-length negotiations").

Plaintiff's claim that CircleLink had superior knowledge of the remote nursing industry is insufficient to plausibly suggest that CircleLink owed EPC any duty of trust and confidence beyond that which typifies a contractual relationship. Both parties brought distinct skill sets to the table – EPC in marketing and CircleLink in software – which motivated them to contract with each other. It is not alleged that CircleLink had access to or influence over any of EPC's moneys, property, or other valuable resources, and CircleLink was not obligated to act on EPC's behalf or with its interests at heart. If anything, the converse relationship is captured in Contract Two, where EPC was authorized to act on CircleLink's behalf as its agent. (*See* Contract Two at 1 ("EPC [] appears herein and is an authorized representative of CircleLink.").) Contract One was intended to be a mutually beneficial arrangement in which both parties

offered services for which they received payment. As such, no fiduciary relationship plausibly could exist and CircleLink's motion to dismiss Count Two is granted.

### iii. *Unjust enrichment*

Plaintiff alleges that CircleLink was unjustly enriched when it used Contract Three to attract more investment money, but then misappropriated the funds and failed to perform the contract in a way that would ultimately allow Plaintiff to receive payment for its work in securing the contract. (Am. Compl. ¶¶ 51-56.) Defendants argue that Plaintiffs may not seek an equitable remedy where a contractual remedy would suffice, and further note that Plaintiff had no entitlement to the investment money, either contractually or in equity. (Mem. in Opp. at 23-25.)

As Defendants have repeatedly noted, Plaintiff was not party to Contract Three and thus may not sue Defendants for its breach. The parties dispute over whether a claim for unjust enrichment and breach of contract may simultaneously be brought is superfluous as Plaintiff could not bring any breach of contract claim under Contract Three.[4] The Court thus examines Count Three on its merits.

"Plaintiffs seeking recovery for unjust enrichment must prove (1) that the defendants were benefited, (2) that the defendants unjustly did not pay the plaintiffs for the benefits, and (3) that the failure of payment was to the plaintiffs' detriment." *Vertex, Inc. v. City of Waterbury*, 278 Conn. 557, 573 (2006). "Unjust enrichment is,

---

[4] At oral argument, Defendants argued that a contract action must exist because Plaintiff's only entitlement to benefit is through Contract One, claiming that EPC should have made contractual provisions against the alleged harm. What Plaintiff should have done is of little import here as the Court examines only that which is alleged in the Complaint. As alleged, there does not appear to be a contractual remedy and thus this claim may be brought in equity.

consistent with the principles of equity, a broad and flexible remedy," which may generally be used when "no remedy is available by an action on the contract" and "good conscience," "equity," and "justice [dictate that] compensation [] be given for property or services rendered" that benefitted another. *Id.* at 573; *see also Reclaimant Corp. v. Deutsch,* 332 Conn. 590, 600 (2019) (noting that unjust enrichment is "an equitable 'means of recovery in restitution'" (quoting *Walpole Woodworkers, Inc. v. Manning*, 307 Conn. 582, 587 n.9 (2012))).

EPC anticipated benefit from its efforts negotiating Contract Three in the form of payment from users, but it never received that benefit because CircleLink failed to attract any new users. In contrast, CircleLink is alleged to have benefitted significantly from the existence of Contract Three by promoting it to secure more funding from investors. EPC does not argue that it was entitled to the investment funds, but rather that it was entitled to compensation for its work, and that CircleLink failed to compensate it appropriately despite CircleLink's own enrichment from EPC's efforts. Thus, taking the allegations as true, EPC has plausibly alleged that CircleLink benefitted, that it unjustly did not compensate EPC for the benefit it derived, and that the failure was to EPC's detriment. Defendants' motion to dismiss on Count Three is denied.

    *d.  Motion to Strike*

Defendant CircleLink moves to strike paragraphs 6-11, 26, 32, 55, and 57 of the Amended Complaint, the attached affidavit of Steve Breaux, which discusses the complicated contractual process between CircleLink and LGH, and all other

attachments from the Amended Complaint.[5] (Mem. in Supp. at 28.) Plaintiff opposes. (Mem. in Opp. at 30 – 33.)

Plaintiff attached five documents to its Amended Complaint: 1) the affidavit of Steve Breaux, who "personally facilitated the contract negotiations between CircleLink and [] LGH in 2017" and which describes his belief that the "exclusive venue and jurisdiction" clause of Contract Three was removed without his consent [Doc. # 93-1]; 2) a red-lined version of Contract Three with edits dated January 31, 2017 [Doc. # 93-2]; 3) a red-lined version of Contract Three with edits dated February 7, 2017 [Doc. # 93-3]; 4) a red-lined version of Contract Three with edits dated February 8, 2017 [Doc. # 93-4]; and 5) an email forwarded from Jonathan Katz of CircleLink to Mr. Breaux discussing CircleLink's capacity and investment money [Doc. # 93-5]. Mr. Breaux's affidavit explains how the draft contracts may impact the forum selection clause of Contract Three and details his receipt of Mr. Katz's email. (Affidavit of Mr. Breaux [Doc. # 93-1].) CircleLink argues that the Affidavit should be struck because it was not based on Mr. Breaux's personal knowledge and thus violates FRE 602, while the red-lined contracts should be struck because they are not properly authenticated. (Mem. in Supp. at 31-33.) CircleLink does not articulate why it believes that the enumerated paragraphs of the Amended Complaint should also be struck, only claiming that "Defendants would suffer prejudice if the Court denies the motion

---

[5] Defendant also requests that the Court not consider the affidavit or attachments in its analysis of the motion to dismiss. As consideration of Mr. Breaux's affidavit is unnecessary to properly analyze the motion to dismiss, CircleLink's first request is moot.

[as] discovery and litigation of immaterial issues increases costs and results in prejudice." (*Id.* at 33.)

"Whether to grant or deny a motion to strike is vested in the trial court's sound discretion, [but generally] motions to strike are viewed unfavorably and rarely granted." *Tucker v. Am. Int'l Grp., Inc.*, 936 F. Supp. 2d 1, 15 (D. Conn. 2013) (internal citations omitted). "In deciding whether to strike a Rule 12(f) motion on the ground that the matter is impertinent and immaterial, it is settled that the motion will be denied, unless it can be shown that no evidence in support of the allegation would be admissible." *Lipsky v. Commonwealth United Corp.*, 551 F.2d 887, 893 (2d Cir. 1976). "If there is any doubt as to the possibility of relevance, a judge should err on the side of denying a Rule 12(f) motion." *Schramm v. Krischell*, 84 F.R.D. 294, 299 (D. Conn. 1979). However, even if relevant, "portions of a complaint may be stricken where they are scandalous and are set out in needless detail." *Gleason v. Chain Serv. Rest.*, 300 F. Supp. 1241, 1257 (S.D.N.Y. 1969), *aff'd*, 422 F.2d 342 (2d Cir. 1970); *see also Tucker*, 936 F. Supp. 2d at 16 ("[A] scandalous allegation has been described as one that reflects unnecessarily on the defendant's moral character, or uses repulsive language that detracts from the dignity of the court.")(internal quotations omitted).

At oral argument, Defendant claimed it would suffer prejudice because the attachments improperly expanded the scope of the complaint. However, the draft contracts focus on Plaintiff's assertion that Louisiana law applies and the email detailing Mr. Katz's concerns about CircleLink adds factual substance to Plaintiff's unjust enrichment claim. The attachments do not expand the scope of the complaint, but simply provide factual content for the allegations therein. Similarly, nothing about the affidavit, contracts, or email is scandalous or impertinent, and Defendant does not articulate any reputational harm it would suffer if the attachments were not struck.

12

CircleLink's contentions that the affidavit violates FRE 602 and that the contracts and email lack proper authentication will be left for subsequent proceedings. Considering the highly disfavored nature of motions to strike and the absence of prejudice to Defendant, the attached pieces of evidence accompanying the Complaint will not be struck and Defendants' motion is denied.

### IV.     Conclusion

For the foregoing reasons, Defendants Sentinel's and Gemini's motions to dismiss [Docs. # 95, 96] are GRANTED. Defendant CircleLink's motion to dismiss Counts One and Two [Doc. # 97] is GRANTED and its motion to dismiss Count Three is DENIED. CircleLink's motion to strike [Doc. # 97] is also DENIED.

IT IS SO ORDERED.

/s/
Janet Bond Arterton, U.S.D.J.

Dated at New Haven, Connecticut this 5th day of August 2021.